■ DEMETRIO PINO et al., Respondents, v ROBERT MARTIN COMPANY et al., Defendants and Third-Party Plaintiffs-Appellants-Respondents. MICROMOLD PRODUCTS, INC., Third-Party Defendant-Respondent-Appellant. (Action No. 1.) DEMETRIO PINO et al., Respondents, v CALI SERVICES, INC., Defendant and Third-Party Plaintiff-Appellant-Respondent, et al., Defendant. MICROMOLD PRODUCTS, INC., Third-Party Defendant-Respondent-Appellant, et al., Third-Party Defendant. (Action No. 2.) [802 NYS2d 501]—

In two related actions to recover damages for personal injuries, etc., (1) the defendants third-party plaintiffs in action No. 1, Robert Martin Company, So. Westchester Realty Associates, L.P., Calisub VI, Inc., and Mack-Cali Realty Corporation, appeal, as limited by their brief, from so much of an order of the Supreme Court, Westchester County (Colabella, J.), entered January 2, 2004, as denied their motion pursuant to CPLR 4404 (a) to set aside a jury verdict in favor of the plaintiff and against them and for judgment as a matter of law dismissing the complaint in action No. 1, the defendant third-party plaintiff Cali Services, Inc., in action No. 2 separately appeals, as limited by its brief, from so much of the same order as denied its separate motion pursuant to CPLR 4404 (a) to set aside the jury verdict in favor of the plaintiff and against it and for judgment as a matter of law dismissing the complaint in action No. 2 insofar as asserted against it, and the third-party defendant Micromold Products, Inc., cross-appeals, as limited by its brief, from so much of the same order as denied its cross motion pursuant to CPLR 4404 (a) to set aside the jury verdict and for judgment as a matter of law dismissing the third-party complaint in action No. 2, and (2) the third-party defendant Micromold Products, Inc., appeals from a judgment of the same court dated December 31, 2003.

Ordered that the appeal from the judgment is dismissed as abandoned; and it is further,

Ordered that the order is modified, on the law, by deleting the provisions thereof denying the motion of the defendant third-party plaintiff Cali Services, Inc., and the cross motion of the third-party defendant Micromold Products, Inc., and substituting therefor provisions granting that motion and the cross motion; as so modified, the order is affirmed insofar as appealed from, the complaint in action No. 2 is dismissed insofar as asserted against the defendant third-party plaintiff Cali Services, Inc., the third-party complaint in action No. 2 is dismissed, and the action against the remaining defendants is severed; and it is further,

Ordered that one bill of costs is awarded to the plaintiffs payable by the defendants third-party plaintiffs Robert Martin Company, So. Westchester Realty Associates, L.P., Calisub VI, Inc., and Mack-Cali Realty Corporation, one bill of costs is awarded to the defendant third-party plaintiff Cali Services Inc., payable by the plaintiffs, and one bill of costs is awarded to the third-party defendant Micromold Products, Inc., payable by the defendant third-party plaintiff Cali Services, Inc.

The injured plaintiff (hereinafter the plaintiff) was employed by the third-party defendant, Micromold Products, Inc. (hereinafter Micromold), as a machine operator. Micromold leased space at 200 Corporate Park Boulevard. The owners of the building were Robert Martin Company, So. Westchester Realty Associates, L.P., Calisub VI, Inc., and Mack-Cali Realty Corporation (hereinafter the owners). Micromold was involved in a construction/demolition project which included expanding its space into the vacant space of the neighboring tenant. The third-party plaintiff in action No. 2, Cali Services, Inc. (hereinafter Cali), was an entity allegedly related to the owners who was performing construction at the subject premises.

In order for Micromold to expand into the new space, a portion of the shared wall had to be demolished to provide access. Before that wall could be demolished, the metal shelves which were affixed and bracketed to that part of the wall had to be removed and dismantled. The plaintiff's boss instructed him to tear down the wall.

The following Monday, the plaintiff, with the use of an A-frame ladder, proceeded to remove boxes from the shelves so that he could dismantle the shelves. He asked one of his coworkers who was working on a lathe to shut off the machine because he had to work in that area. The plaintiff intended to set up the ladder in the space between the lathe and the wall. While the coworker turned the lathe off by pushing the button and pulling the gear, the machine was still plugged in. There was a wooden platform between the lathe and the wall. As the plaintiff attempted to position the ladder between the lathe and the wall, he fell off the edge of the wooden platform, and landed on the lathe. When the plaintiff landed on the lathe, the machine started running, causing him to sustain injuries.

Labor Law § 241 (6) requires that safeguards be taken with regard to "[a]ll areas in which construction, excavation or demolition work is being performed." Owners, contractors, and their agents are liable for any violation of this statute regardless of their direction or control of the work (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 500 [1993]).

Demolition work is defined as "work incidental to or associated with the total or partial dismantling or razing of a building or other structure including the removing or dismantling of machinery or other equipment" (12 NYCRR 23-1.4 [b] [16]). At trial it was established that the metal shelves were affixed and bracketed to that section of the wall which was to be demolished. The shelving consisted of metal poles, which held the actual shelves. The shelves went from the floor to approximately two

feet below the ceiling. The poles and cross bars were attached to each other with screws, nuts, and bolts.

The Court of Appeals defined a structure as " 'any production or piece of work artificially built up or composed of parts joined together in some definite manner' " (*Joblon v Solow*, 91 NY2d 457, 464 [1998], quoting *Lewis-Moors v Contel of N.Y.*, 78 NY2d 942, 943 [1991]). Since the shelving is a structure, and because the plaintiff was directed to dismantle this structure, we find that he was engaged in demolition work covered by Labor Law § 241 (6).

The appellants' contention that the plaintiff was removing boxes from shelves and, accordingly, he was not entitled to the protection of Labor Law § 241 (6), is unpersuasive. While removing boxes from shelves is not a protected activity under Labor Law § 241 (6), the plaintiff's placement of the ladder in preparation for the removal of the boxes to be followed by the dismantling of the shelves was "work *incidental to or associated* with the total or partial dismantling . . . of a . . . structure" (12 NYCRR 23-1.4 [b] [16] [emphasis added]). Therefore, the plaintiff's activity was demolition work as defined by the Industrial Code and, as such, fell under the purview of Labor Law § 241 (6) (*see Covey v Iroquois Gas Transmission Sys.*, 89 NY2d 952, 954 [1997]; *Makaj v Metropolitan Transp. Auth.*, 18 AD3d 625 [2005]; *Danielewski v Kenyon Realty Co.*, 2 AD3d 666, 667 [2003]).

To prevail on a cause of action under Labor Law § 241 (6), the plaintiffs must also establish that the defendants violated a specific safety regulation promulgated by the Department of Labor (*see Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501-502 [1993]; *Rzepka v 50 E. 78th Corp.*, 262 AD2d 298 [1999]). The plaintiffs established a violation under 12 NYCRR 23-3.2 (a) (2) of the Industrial Code. That section provides, "[b]efore demolition is started, all . . . electric . . . supply lines shall be shut off and capped or otherwise sealed" and, as such, establishes a standard of conduct sufficient to impose liability under Labor Law § 241 (6). The evidence was sufficient to establish that if the electrical supply line in this area was shut off, or the plug for the lathe was simply removed from the electrical socket before the plaintiff began dismantling the shelves, the plaintiff would not have sustained the injuries that occurred when the lathe turned on following his fall.

In light of this determination, we need not address the owner's remaining contentions.

The Supreme Court erred in denying Cali's motion to set aside the verdict, since Cali established that it did not exercise

control over the plaintiff or his work (*see Lopes v Interstate Concrete,* 293 AD2d 579 [2002]; *Morris v Pepe,* 283 AD2d 558, 559 [2001]; *Russin v Picciano & Son,* 54 NY2d 311 [1981]; *Sabato v New York Life Ins. Co.,* 259 AD2d 535, 537 [1999]). At trial, the plaintiffs failed to submit any evidence which indicated that Cali exercised any supervision or control over the plaintiff or the activity which led to his injury. The plaintiffs also failed to establish that any construction work was delegated to Cali. Moreover, the plaintiff did not identify any Cali employees at the work site. Since the plaintiffs failed to show that Cali had the authority to control the activity which led to the plaintiff's injury, or that Cali was present at the site, Cali's motion to set aside the verdict insofar as asserted against it and for judgment as a matter of law dismissing the complaint in action No. 2 insofar as asserted against it should have been granted (*see Lopes v Interstate Concrete, supra*).

In light of the dismissal as to Cali, the third-party complaint in action No. 2 against Micromold also should have been dismissed. Schmidt, J.P., S. Miller, Santucci and Skelos, JJ., concur.